1          IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2

3   NORTHERN CALIFORNIA POWER              )

4   AGENCY, et al.,                        ) Case No.

5            Plaintiff,                    ) 14-817C

6                 vs.                       )

7   THE UNITED STATES OF AMERICA,          )

8            Defendant.                     )

9

10

11                        Suite 609

12          Howard T. Markey National Courts Building

13                  717 Madison Place, N.W.

14                     Washington, D.C.

15                Wednesday, January 3, 2018

16                      10:00 a.m.

17             Pretrial Conference (Telephonic)

18

19

20

21          BEFORE: THE HONORABLE THOMAS C. WHEELER

22

23

24

25   Elizabeth M. Farrell, CERT, Digital Transcriptionist

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFFS:

 3              DAVID T. RALSTON, ESQ.

 4              FRANK S. MURRAY, JR., ESQ.

 5              KRISTA A. NUNEZ, ESQ.

 6              Foley & Lardner LLP (DC)

 7              3000 K Street, N.W.

 8              Suite 600

 9              Washington, DC 20007-5109

10              (202) 295-4097 / (202) 672-5399 (fax)

11              dralston@foley.com

12    ON BEHALF OF THE DEFENDANT:

13              PAUL D. OLIVER, ESQ.

14              SOSUN BEA, ESQ.

15              ASHLEY AKERS, ESQ.

16              ALEX HASS, ESQ.

17              U.S. Department of Justice - Civil Division

18              Post Office Box 480

19              Ben Franklin Station

20              Washington, DC 20044

21              (202) 353-0516 / (202) 514-8624 (fax)

22              p.davis.oliver@usdoj.gov

23    ALSO PRESENT:

24              Jane Luckhardt, Esq., NCPA

25              Lisa Akin, Paralegal, USDOJ
```

```
 1              P R O C E E D I N G S
 2                 -   -   -   -   -
 3         (Proceedings called to order, 10:06 a.m.)
 4         THE COURT:  We're on the record this morning
 5    for our pretrial conference in Northern California Power
 6    Agency vs. the United States, docket number 14-817C.
 7    And, Mr. Ralston, you're there?
 8         MR. RALSTON:  Your Honor, I am here, along with
 9    my colleagues Frank Murray and Krista Nunez from Foley &
10    Lardner, and calling in from California is Jane
11    Luckhardt, Esq., the general counsel of Plaintiff,
12    Northern California Power Agency.
13         THE COURT:  All right, thank you.  Welcome to
14    you all.
15              And for the United States?
16         MR. OLIVER:  Yes, this is Davis Oliver for the
17    United States.  I'm joined by my colleagues, trial
18    attorneys Sosun Bea, Ashley Akers and Alex Haas, as well
19    as paralegal Lisa Akin.
20         THE COURT:  All right.  And welcome to all of
21    you.  Thank you for joining this morning.
22              I have a standard set of pretrial agenda items
23    that I'd like to go over with you and you're welcome to
24    ask any questions you may have at the end of each
25    subject.  And then at the end of this, we'll open it up
```

1    to other questions or subjects that you wish to raise.

2    But let me just begin with these usual subjects that I

3    always discuss in a pretrial conference.

4             First of all, our trial schedule will be -- it

5    will start at 9:30 in the morning and we will typically

6    go until 5:00 p.m. in the afternoon with a one-hour lunch

7    break at about 12:30 and a 15-minute break in the morning

8    and afternoon.  And I tend to be very timely, so you can

9    rely upon those scheduled times during the typical day.

10            Let me further say that when we do out-of-town

11   trials sometimes there are quirks in the -- you know, the

12   schedules that the Court has us follow that may require

13   an adjustment.  But for the time being, we'll plan on

14   9:30 to 5:00 as our normal trial day.

15            Any questions about that?

16            MR. RALSTON:  None from the Plaintiff, Your

17   Honor.

18            THE COURT:  All right.

19            MR. OLIVER:  No, Your Honor.

20            THE COURT:  Okay.  Let me move then to opening

21   statements.  I typically permit 30 minutes per side for

22   opening statements at the beginning of trial.  The

23   Defendant may reserve its opening statement until the

24   start of its case if they wish, but normally both sides

25   do their opening statement at the beginning.  And in

1    response to a question often asked, it's fine with me if

2    witnesses who are scheduled to testify want to sit in and

3    listen to the opening statement.  That's fine.

4              Any questions about that?

5              MR. RALSTON:  No, Your Honor.

6              MR. OLIVER:  No, Your Honor.

7              THE COURT:  All right.  Let me go then to

8    Federal Rule of 615 and the exclusion of fact witnesses.

9    I favor this procedure and will tend to follow it unless

10   there is an unusual reason not to.  So after a witness

11   testifies, the witness may remain in the courtroom if

12   they wish, unless counsel anticipates that the person may

13   appear again as a rebuttal witness later in the trial.

14             This rule does not apply to expert witnesses.

15   Expert witnesses on either side may remain in the

16   courtroom throughout the proceedings.  And then also the

17   other exception is that each party is entitled to one

18   representative in court during the trial.  The person

19   designated for this role should remain the same

20   throughout the trial.

21             Do you know at this point who your in-court

22   representatives will be?

23             MR. RALSTON:  Your Honor, yes, on behalf of the

24   Plaintiffs, it will be James Takehara.

25             THE COURT:  Okay.

1           MR. RALSTON:  Of Northern California Power

2    Agency.

3           THE COURT:  Okay.  And for the United States?

4           MR. OLIVER:  Yes, Your Honor.  It will be

5    Heather Casillas from the Bureau of Reclamation.

6           THE COURT:  Okay, very good.  Do you have any

7    questions about Rule 615?

8           MR. RALSTON:  None by the Plaintiff, Your

9    Honor.

10          MR. OLIVER:  I'd just note, Your Honor, per the

11   exception that you just noted, that Heather Casillas,

12   she's on the may call list for -- she's on the may call

13   list for Plaintiffs as -- her name is Heather Lindell

14   (phonetic).  That's her maiden name now.

15          THE COURT:  Okay.

16          MR. OLIVER:  But in any event, she is our

17   representative.

18          THE COURT:  All right.  And the way that will

19   work, of course, is that Ms. Casillas can be in the

20   courtroom for all the proceedings and when it's time for

21   her to testify, if she does, she'll just come up and take

22   the stand and then resume her position at counsel's table

23   after it's over.

24          Let me raise a slightly related subject at this

25   point and that is discussions with or among witnesses.

1    This is common sense, but I've had problems with it
2    before.  That is, fact witnesses who have testified shall
3    not discuss any aspect of their testimony or the
4    proceedings they have observed with other fact witnesses
5    who have not yet testified.  You should not and shall not
6    share trial transcripts with fact witnesses who have not
7    yet testified, and after a witness has been tendered for
8    cross examination, counsel or the party who called the
9    witness shall not have any discussions about the facts
10   with that person until the cross examination is
11   completed.
12        The reason I say that I've had some issues in
13   this context before, I had a case not too long ago where
14   the Government's expert witness was actually conferring
15   with Government counsel during a break sort of along the
16   lines of how am I doing, is there anything that I should
17   do better.  And the Plaintiff's counsel had observed this
18   discussion occurring in the hallway and brought it to my
19   attention, and it resulted from that witness being
20   excused from the stand before her testimony was
21   completed.
22        So it's a very important rule and one that I'm
23   quite serious about and both parties need to strictly
24   follow it.  Are there any questions about that?
25        MR. MURRAY:  Your Honor, this is Frank Murray

1    for the Plaintiffs.  I guess the only question -- I think

2    we've had some discussions with counsel for the

3    Government on sort of some of the dual witnesses, you

4    know, that we would presumably initially call and then

5    the Government would do their direct, you know, sort of

6    combine their cross with their direct of them so as to

7    handle them in one fell swoop as opposed to having them

8    come at different stages of the proceedings.  And I just

9    wanted to see if there was -- if I understand the rule

10   about the cross examination -- being tendered for cross

11   examination, how that plays into that if we were to go

12   with that type of arrangement.

13        THE COURT:  Well, first of all, it's fine with

14   me if you want to agree to that kind of a procedure.

15   Generally, it's for the convenience of the witness more

16   than anything else, especially if they're from out of

17   town.  But the procedure I just described would apply to

18   a witness that's been tendered for cross examination,

19   whenever that may come up, you know, during the person's

20   testimony.

21        So let's say the Plaintiff calls a witness and

22   the person is then tendered for cross examination.  The

23   Government could not say, well, it's also for direct so

24   we can talk to the witness.  That's not the case.  You

25   know, the testimony will go forward without that kind of

1    an interruption.

2              MR. MURRAY:  Thank you.

3              THE COURT:  Okay.  Any other questions on that

4    subject?

5              (No response.)

6              THE COURT:  Okay.  Then, further, as to the

7    examination of witnesses, each party is entitled to

8    essentially two examinations of each witness.  So you

9    have direct examination, cross examination, redirect

10   examination and recross and then that's it.  Each

11   examination each time is confined to the scope of the

12   previous examination, and then after that process is

13   completed, the witness is excused.

14             Any questions about that?

15             MR. OLIVER:  No, Your Honor.

16             THE COURT:  Okay.  Very well.

17             MR. RALSTON:  None by Plaintiffs, sir.

18             THE COURT:  Okay.  Let me inquire whether you

19   intend to employ technology of some kind during the

20   trial, whether it be PowerPoint, overhead projector, any

21   form of displaying an exhibit on a screen.  What do you

22   plan to do in this regard?

23             MR. RALSTON:  Your Honor, we'll be using Trial

24   Director for the presentation of exhibits.

25             THE COURT:  Okay.

1          MR. OLIVER:  The Government, likewise, will be

2     using Trial Director.

3          THE COURT:  Okay.  Let me say in that regard if

4     you have any reason to be in touch with the District

5     Court in San Francisco.  I think we gave you this

6     information, but we're going to be at the Philip Burton

7     United States Courthouse, 450 Golden Gate Avenue, and the

8     contact person is Tana Ingle, T-A-N-A, last name I-N-G-L-

9     E.  So if you have any questions about the courtroom or,

10    you know, setting up in any regard, I would suggest you

11    be in touch with her.

12         MR. OLIVER:  Very good.

13         MR. RALSTON:  Thank you.

14         THE COURT:  Let me turn then to the subject of

15    exhibits.  I would like to know -- you probably have a

16    handle on this at this point, but how many binders do you

17    think will be required first for the Plaintiffs' exhibits

18    and then for the Defendant's exhibits?

19         MR. RALSTON:  Your Honor, the bound version of

20    our exhibits are 12 volumes.

21         THE COURT:  Okay.

22         MR. RALSTON:  Hard copy.

23         THE COURT:  Okay.

24         MR. OLIVER:  And the Government has one binder.

25         THE COURT:  Okay.  I looked at your exhibit

1    list to try to get a feel for this and your responses are

2    consistent with my assessment.

3            Let me tell you one of my concerns.  I'm most

4    concerned about not taking undue amounts of time during

5    the trial to find an exhibit that is going to be

6    proffered to a witness.  And with respect to the

7    Plaintiffs' 12 volumes of exhibits, I'm going to suggest

8    that you consider using a separate witness binder for

9    each exhibit -- for each witness, rather.  I'm thinking

10   that when you go into your direct examination, you know

11   the exhibits you're going to use for your direct

12   examination.

13           It makes things go much more smoothly and

14   easier if I have an exhibit binder for that witness which

15   I can just keep in front of me for the duration of the

16   testimony.  That versus having to go back through 12

17   volumes each time and find the exhibit, the witness

18   binder is much more preferable.

19           Do you think you can do that for us?

20           MR. RALSTON:  Your Honor, yes, we can work with

21   that.  We'll work with Trial Director to be able to do

22   that.

23           THE COURT:  Okay.

24           MR. MURRAY:  And, Your Honor, I guess the one

25   question I have on a binder, obviously, we're going to

1   have Trial Director to try to work with the witness with
2   some stuff on the screen, with some pop-outs and
3   highlighting, et cetera, but the other -- the other
4   thing, in terms of our binders, there were some native
5   spreadsheets or other native files that the Government
6   produced to us that, you know, don't print out very well
7   in hard copy, and so the exhibit that we have is a native
8   Excel file.
9           You know, I guess we'll just have to put that
10  up on the screen.  I just don't know if you would rather
11  -- we could probably have that on a disk or something if
12  you would want to load it up on your own computer.  But
13  just wanted to get a little guidance from you on native
14  files that are -- exhibits that are native files.
15          THE COURT:  Yes, good question.  We can
16  definitely use electronic copies of native files, and if
17  you want to load it on a disk for us for later reference,
18  that's going to be fine.  I mean, it's virtually
19  impossible to deal with a hard copy I've found.  So I
20  think that's a good point.  We can do that.
21          And then the other thing is numbers of copies
22  of exhibits.  Of course, you have to have furnished a
23  hard copy to opposing counsel, the opposing party, but
24  then you also have to think about how am I going to get
25  the exhibit in front of the witness for that person to

1  refer to.  And for the Court's requirements, I need to

2  have a copy for myself and then you need one extra copy

3  which my law clerk and the court reporter will take

4  custody of.  After the trial is over, the court reporter

5  will take control of that copy and send it back to

6  Washington as the official clerk's office copy of the

7  exhibits.

8            Do you have any questions about that?

9            MR. RALSTON:  Your Honor, just let me develop

10  that a bit.  So for the official record, you're

11  indicating it would be the hard -- the 12 binders of hard

12  copies that we would have there at trial --

13            THE COURT:  Yes.

14            MR. RALSTON:  -- or could it be the electronic

15  version?

16            THE COURT:  I think it needs to be the hard

17  copy.  Generally, the court reporting firm will take

18  custody of that after trial and then send it to

19  Washington.

20            MR. RALSTON:  All right.

21            THE COURT:  Okay.  The copy that you furnish to

22  me, we'll be using in chambers in resolving the case

23  post-trial.  Hopefully, at that point, we'll be able to

24  use some of your boxes that you've taken to California

25  and box them up and send them back to Washington.

1          MR. RALSTON:  Yes, understood.

2          THE COURT:  Okay, all right.  Do we have

3     anybody involved in the trial who will be testifying from

4     a remote location, say by video?

5          MR. RALSTON:  Not at this point for Plaintiffs,

6     Your Honor.

7          THE COURT:  Okay.

8          MR. OLIVER:  No, Your Honor.

9          MS. BAE:  Your Honor, this is -- actually, this

10    is Sosun Bea from the Government.  I believe Plaintiffs

11    did list, I think, two witnesses on their may call list

12    that they stated it would be possible, if they did call

13    them, to call them from Washington since they reside

14    here.

15         THE COURT:  Okay.  Well --

16         MR. RALSTON:  This -- I'm sorry, Your Honor, go

17    ahead.

18         THE COURT:  I'm amenable to taking testimony by

19    video, if necessary.  You know, if it's a may call

20    situation for somebody who's going to have a limited

21    amount of testimony, it seems perfectly fine to take that

22    testimony by video versus having a person travel to

23    California.  So, you know, that's very acceptable.  If we

24    get to that position and you want to call those

25    witnesses, we can certainly do it that way.

1          The only complication there is if you have --

2    excuse me, exhibits that you want to show the person,

3    there has to be some arrangement to make sure the person

4    has the exhibits available to them.

5          MR. RALSTON:  Yes.

6          THE COURT:  Okay.  All right.  Next subject --

7    and this, again, is common sense, but just a few words

8    about courtroom decorum.  Business attire is expected of

9    all counsel.  Men should wear suits, sport coats or

10   blazers and women should dress comparably.  Beverages or

11   snacks except water are not permitted in court.  All cell

12   phones of any kind or other electronic devices must be

13   turned off.  The exception there is for expert witnesses

14   who may be sitting in the gallery and they're taking

15   notes or referring to data they have.  That's fine.  I

16   just don't want a lot of cell phones going off in the

17   course of trial.

18          And then anyone who is late for proceedings,

19   whether at the beginning or after a break, that person

20   should just sit in the back in the gallery until the next

21   break in the proceedings because I don't want a parade of

22   people going to and from counsel's table as the

23   proceedings are going on.

24          Any questions about those subjects?

25          MR. OLIVER:  No, Your Honor.

1         THE COURT:  Okay.

2         MR. RALSTON:  Your Honor, I assume for

3    electronic devices, it's permissible for counsel to have

4    their laptops for purposes of working.

5         THE COURT:  Oh, sure, yeah.  That's fine.  I'm

6    sorry.  That's a good point.

7         And then after the trial is over, in lieu of

8    closing arguments out there, I'm going to have you all

9    submit post-trial briefs, which will contain proposed

10   findings of fact and conclusions of law.  This is really

11   your chance to help me write the opinion in the case.  It

12   will go much more efficiently and faster if I have your

13   input on proposed findings of fact and conclusions of

14   law.  And the schedule for that we will agree upon at the

15   close of trial.

16        Generally, I will receive post-trial briefs

17   from the parties concurrently and then there will be an

18   opportunity to respond to the other side's brief

19   typically about 30 days thereafter.  And then after the

20   briefing is completed, we can hold what amounts to

21   closing argument at that time, and I would plan to do

22   that in Washington, D.C.

23        Any questions about that?

24        MR. OLIVER:  No, Your Honor.

25        MR. RALSTON:  None from the Plaintiff.

Northern California Power Agency v. USA                    1/3/2018

```
 1           THE COURT:  All right.  I want to remind both
 2   sides that you need to make arrangements with the court's
 3   reporting company -- it's called For The Record, Inc. --
 4   to make sure that you order a trial transcript because
 5   you will find it very difficult to prepare proposed
 6   findings of fact if you don't have the transcript.  So
 7   it's essential that you do that.
 8           And then last but not least on my list of
 9   items, I would like each of you to furnish a glossary of
10   terms to the court reporter and to my law clerk at the
11   very beginning of trial.  This practice will result in us
12   obtaining a much more accurate trial transcript than
13   otherwise might be the case, and so compile a list of odd
14   or unusual terms that you think may come up during the
15   trial and just make sure that the court reporter has a
16   comprehensive list that he or she can refer to as we go
17   through.
18           Is there any question about that?
19           MR. MURRAY:  Your Honor, on that, is the intent
20   just sort of to provide spellings of things they may here
21   phonetically and not know or is it to sort of say, here's
22   a term and here's what it means?
23           THE COURT:  No, you don't have to do here's
24   what it means.
25           MR. MURRAY:  Okay.
```

1          THE COURT:  Just accurate spelling.

2          MR. MURRAY:  That's what I thought, but I just

3     wanted to make sure.

4          THE COURT:  Yeah.  Okay.  All right.  Well,

5     that completes my subjects.  Let me open the floor to --

6     well, let's start with the Plaintiff.  Mr. Ralston, do

7     you have any other subjects you would like to raise?

8          MR. RALSTON:  Thank you, Your Honor.  Yes, I

9     do.

10         THE COURT:  Okay.

11         MR. RALSTON:  I have one evidentiary issue that

12    I think bears being discussed now and a handful of -- a

13    few other trial logistical issues --

14         THE COURT:  Okay.

15         MR. RALSTON:  -- that we'd like to discuss.

16         THE COURT:  Sure.

17         MR. RALSTON:  First, on the evidentiary issue,

18    this concerns Defendant's objections to email, statements

19    and documents of U.S. employees other than those who work

20    at the Bureau of Reclamation.  I'll note in advance, Your

21    Honor, we realize the Court doesn't have the exhibits

22    currently and we're not seeking a ruling on the

23    admissibility of the merits.  I'd rather raise it now

24    because, as a practical matter, we think these objections

25    effectively are a motion in limine and should be handled

1    under the Court's pretrial order as such, rather than

2    just listed in the Defendant's objections to the

3    Plaintiffs' pretrial exhibit list, which was filed last

4    Friday.

5            A short background on that, in that filing last

6    Friday, which is ECF 77, Defendant lodged a host of

7    hearsay objections to email, statements and documents of

8    U.S. Government employees other than those at the Bureau

9    of Reclamation.  The main focus of those objections were

10   email, statements and documents of U.S. employees at

11   Western Area Power Administration, which is the federal

12   agency that contracts with the Plaintiffs to supply

13   hydropower from the Central Valley Project and invoices

14   and collects for the mitigation and restoration charges

15   at issue in the case.  Those objections included Regina

16   Rieger, who Defendant designated as an RCFC 30(b)(6)

17   witness.

18           In our discussions with government counsel,

19   they shared that the basis for those objections is their

20   position that those government employees are not

21   considered government employees for purposes of Federal

22   Rule of Evidence 801(d)(2)(D), which provides that a

23   statement offered against an opposing party that was made

24   by the party's employee on a matter within the scope of

25   their employment is not hearsay.  And Defendant, we

1     gather, contends that FRE 801(d)(2)(D) doesn't apply to

2     those U.S. Government employees, such as those assigned

3     at Western because Western has long taken a position,

4     similar to Plaintiffs' position in this litigation, that

5     the Bureau of Reclamation's failure to implement the

6     proportionality provision in Section 3407(d)(2) of the

7     Central Valley Project Improvement Act (inaudible) the

8     Plaintiffs and other Central Valley Project power

9     contractors is contrary to law.

10          I raise it today because we think those

11    objections, as a practical matter, are really a motion in

12    limine by Defendant seeking to exclude the evidence, and

13    I'll observe that they raise significant related issues,

14    such as whether the Plaintiffs may treat those U.S.

15    employees for purposes of leading questions for cross

16    examination -- direct examination as hostile witnesses.

17    In a sense, the embedded issue there is that if they're

18    not hostile witnesses, then can we interview those

19    persons prior to trial?

20          While arguably the issue should have been

21    raised earlier, as this situation where Western has taken

22    a polar opposite position from Reclamation on the key

23    issue in the case, our main point today is that it ought

24    to be briefed by Defendant in writing in advance of

25    trial.  Because Defendant's position will certain impact

1    trial position -- trial proceedings considerably, we

2    ought to get clarity on those issues in advance.

3            So I'll stop there, Your Honor, and let Mr.

4    Davis -- Mr. Oliver rather --

5            THE COURT:  Mr. Oliver, would you like to

6    address this subject?

7            MR. OLIVER:  Absolutely.  So we have, at least

8    in my practice, a somewhat -- a unique circumstance in

9    which you have a governmental agency, which is the

10   Western Area Power Administration, that has taken a

11   position that is really identical to the Plaintiffs'

12   position in this case, which is in terms of how they

13   interpret the proportionality provision at issue.  And

14   the basis of the objection is that statements by Western

15   employees are hearsay and are not subject to the hearsay

16   exception because they are not statements made by a party

17   opponent.

18           The lawsuit concerns illegal exaction claims in

19   which the entity that is purportedly doing the illegal

20   exacting is the Bureau of Reclamation.  They are the ones

21   that are assessing the payments, they are the ones that

22   have the methodology that Plaintiffs and Western believe

23   is contrary to the statute, and it's the Bureau of

24   Reclamation that purportedly has, according to

25   Plaintiffs, has not collected the amount of monies from

1    water contractors that they believe should be collected

2    under the law.  So the party opponent, for purposes of

3    hearsay, would be the Bureau of Reclamation and not

4    Western.

5            The purposes of the hearsay exception for the

6    party opponent fit squarely for an entity like the Bureau

7    of Reclamation.  But that same rationale for having an

8    exception for a party opponent does not fit for an agency

9    like Western whose interest and whose position that

10   they've taken in this litigation and historically is

11   diametrically opposed to that of the United States.

12           THE COURT:  Is Ms. Rieger expected to testify

13   at trial?

14           MR. OLIVER:  She's a will call.  So to the

15   extent Plaintiffs -- well, I guess I could let Mr.

16   Ralston speak to that.  But she is a will call witness

17   for Plaintiffs.

18           MR. RALSTON:  Yes, Your Honor.  We will --

19           THE COURT:  She's going to testify?

20           MR. RALSTON:  -- call her (inaudible).

21           THE COURT:  Okay.  Well, I can tell you that if

22   we have one government agency out there who agrees with

23   Plaintiffs' interpretation, I think there's a near

24   certain chance that evidence is coming into the record.

25   I don't see any other outcome there.  I want to see that

1    sort of evidence because -- it seems to me the

2    Defendant's job then is to show that its own

3    interpretation by the Bureau of Reclamation is the one

4    that should govern.  But I think the other evidence is

5    coming in.

6            MR. OLIVER:  Right.  I have no problem with

7    Regina Rieger's testimony that will come in.  The issue

8    was how it comes in.  Does it come in as hearsay of some

9    other witness?  Does it come in as hearsay of a witness

10   that is not going to testify?  I don't -- you know.  So

11   I'm certainly not arguing that, you know, Western should

12   not -- that Plaintiff should be somehow precluded from

13   presenting the testimony of Western witnesses to

14   articulate Western's point of view.  I understand --

15           THE COURT:  Well, let --

16           MR. OLIVER:  I understand what Your Honor is

17   saying.

18           THE COURT:  Okay.  It's difficult for me, not

19   having the exhibit in front of me.  I can't really give

20   you a ruling.  But, you know, based upon what you've all

21   said, I don't see this evidence, either the testimony or

22   the documents, being excluded.  You know, I want to see

23   the whole record in this case.  If we have a situation

24   where the two federal agencies disagree, well, that's the

25   way it is.

1          MR. OLIVER:  Yes, Your Honor.

2          THE COURT:  Okay.  But I'm going to leave the

3    determination on individual exhibits until the time of

4    trial.  That's just my initial feeling about it today.

5          MR. RALSTON:  That's fine, Your Honor.  I

6    understand.

7          THE COURT:  Okay.

8          MR. RALSTON:  Let me turn to a couple of

9    logistical -- trial logistical issues.  First, with

10   respect to admission of excerpts and designation of

11   deposition transcripts of Defendant's employees, we seek

12   the Court's guidance as to what process the Court would

13   like to use to handle the admission of excerpts and

14   designation of deposition transcripts of those employees.

15   The Court's pretrial order does not specifically address

16   a process for admission of deposition designations, and

17   Appendix A really specifically doesn't apply to FRE 801

18   depositions, which all of these were.  So it would be

19   helpful for us to know how the Court would like to

20   proceed on that point.

21          By way of short background, Your Honor, we

22   proposed six Reclamation employees and one Western

23   employee.  That's Ms. Rieger who was just mentioned.  If

24   the Court's had an opportunity to look through

25   Plaintiffs' memorandum for contentions of fact, you'll

1    see that we have done transcript excerpts and

2    designations by page and line number throughout the

3    document that are drawn from those depositions filed --

4    and that was filed back in October, October 30th.

5              THE COURT:  Okay.  Well, let's --

6              MR. RALSTON:  Also --

7              THE COURT:  Go ahead.

8              MR. RALSTON:  I'm sorry, Your Honor.

9              THE COURT:  Go ahead.  You go ahead.

10             MR. RALSTON:  The last point is, in the

11   interest of completeness, we provided the entire

12   deposition transcripts as exhibits -- as Plaintiffs'

13   exhibits.  I'd underscore we had no expectation the Court

14   would read the depositions in their entirety, not needed,

15   not desired.  They were provided simply as a matter of

16   convenience to the parties so that if there were

17   disagreements on interpretations and a desire for

18   additional designations, that the transcripts were there

19   and available readily to the Court and to the parties.

20             Our only question today is how the Court would

21   like to proceed in terms of the admission of the excerpts

22   and designations.  Thank you.

23             THE COURT:  All right.  Well, first of all, you

24   understand that our Court has nationwide jurisdiction and

25   that the Court has a strong preference to receive the

1    live testimony in court of all witnesses who are

2    presented by the parties.  If the parties can agree on

3    designations of depositions that they want to use in lieu

4    of live testimony, I have no objection to that.  It's

5    frequently done where maybe the witness has a limited

6    role or you have limited testimony that you want to

7    present, and if the parties have no objection to it, I

8    can receive excerpts from depositions.

9         But the problem with just the wholesale

10   introduction of deposition testimony is that I -- you

11   know, the opposing party hasn't had any chance to cross

12   examine typically and so, you know, I'm reluctant to do

13   that.  So more than likely, if the Government objects,

14   these depositions would not come in.

15        MR. RALSTON:  Your Honor, I would note that all

16   of the depositions at issue here are government employees

17   so that they would be covered under 801.  In addition,

18   all but one was a 30(b)(6) designee as well, and under

19   Rule 32 of the RCFC rules would be admissible for any

20   purpose.  That's, in essence, the legal support for our

21   position on that.

22        Most of these witnesses will be examined at

23   trial and are on our will call list, but there may very

24   well be aspects of their deposition testimony that would

25   be relevant as well.  And in each of the cases, the

1    Department of Justice defended those witnesses at the

2    depositions.  So they had the opportunity to rehabilitate

3    them if they felt there was something that was said

4    erroneously.

5         THE COURT:  Well, if the witness is going to

6    testify anyway, the deposition, at that point, can be

7    used for impeachment purposes only and that's the way it

8    should be treated.  So just to summarize, the depositions

9    do not come into evidence automatically.  The witness

10   testifies in court and is subject to then cross

11   examination, but the deposition may be used for

12   impeachment.

13        MR. RALSTON:  Will Your Honor entertain a post-

14   trial motion to admit aspects of depositions if we feel

15   that's appropriate?

16        THE COURT:  Sure.  You know, we'll see what

17   transpires during trial.  You're always welcome to file

18   any motion you deem necessary.

19        MR. RALSTON:  Very good.  Thank you.

20        THE COURT:  All right.

21        MR. RALSTON:  The next point is that we do have

22   some exhibits to move into evidence at the commencement

23   of trial that we've reached agreement with government

24   counsel on, so we'll need to plan a little time at the

25   commencement of trial to handle that.

1          THE COURT:  You have some Joint exhibits,

2     right?

3          MR. RALSTON:  We have Joint exhibits.  We also

4     have reached agreement on admission of some of the

5     Plaintiffs' exhibits as well --

6          THE COURT:  Okay.

7          MR. RALSTON:  -- that there is no objection to.

8     We sought agreement and the Government was going to agree

9     because those matters have been stipulated to and there

10    are documents -- in essence, corporate documents and

11    contracts between the Plaintiffs -- contracts between the

12    Plaintiffs and Western and corporate documents

13    establishing the legal right of the Plaintiffs to be in a

14    position of contracting and to make the claims.  And as a

15    result of our agreement, they're able to excuse a number

16    of corporate witnesses who otherwise would have had to

17    have been called.

18         THE COURT:  All right.  The answer is sure.

19    I'm willing to receive at the start of trial any exhibits

20    to which there is no objection.  And I think, at this

21    point, that includes the Joint exhibits and then any

22    other exhibits on which you've reached agreement.

23         MR. RALSTON:  And a related point, Your Honor,

24    on this exhibits.  We'd note in the pretrial order the

25    Court's statement that if a document isn't discussed at

1    trial, the Court would generally not extend it much
2    weight.  I think with respect to these documents, they
3    aren't -- we won't have a witness now testifying about
4    them, but we've reached stipulations on that.  So I don't
5    think that would be really applicable here, but I just
6    wanted to raise it in case the Court was of the view that
7    even with respect to these admitted documents, you wanted
8    to have at least some witness touch them and explain what
9    those documents are.
10          THE COURT:  No, I don't think that will be a
11   problem since you have stipulations on many of these
12   subjects.  The problem I was trying to address in the
13   pretrial order is that sometimes parties will give me a
14   lengthy, complex document and expect me to figure it out,
15   and that's not going to fly.  But in this situation, I
16   think it will be fine.
17          MR. RALSTON:  Thank you.  The next point is
18   that Defendant has mentioned earlier -- Mr. Oliver
19   mentioned earlier that he intends to combine cross
20   examination and direct examination with respect, I think,
21   really to all of the government witnesses who we will be
22   calling because they all will be out of town in light of
23   the trial being in San Francisco.  We're fine with that
24   with the understanding that that will be the only direct
25   examination opportunity for witnesses handled in that

1    manner.  I think your prior comments, Your Honor, covered
2    that pretty thoroughly, but I wanted to make that point
3    of record so that there's no disagreement on that.
4           THE COURT:  I think that what you say is
5    correct.  Mr. Oliver, do you have any contrary view?
6           MR. OLIVER:  No.  What you said -- what Your
7    Honor said earlier, I understand that's the way we're
8    going to proceed.  So I have no further comment.
9           THE COURT:  Okay, that's fine.  This issue is
10   normally dealt with by agreement between counsel.  It is
11   convenient during the examination for the Government to
12   say, I finished my cross examination and now I'm going to
13   move to direct examination, just so we know what the
14   dividing point is.  But, yeah, that's fine.
15          MR. RALSTON:  Very good.  The next issue is --
16   or next point is that we have prepared a version of
17   Plaintiffs' memorandum of contentions of fact that --
18   with conforming citations to the Joint exhibits and
19   Plaintiffs' exhibits.  As originally filed, Your Honor,
20   it had citation to the deposition exhibits rather than to
21   the now -- what are now the Plaintiffs' exhibits.  As a
22   convenience to the Court, we would propose to make that
23   available now, and with the Court's approval, would file
24   a copy so it's readily available to the Court and the
25   parties.  So I wanted to seek the Court's guidance as to

1    how to proceed in that respect.

2              THE COURT:  So if I understand correctly,

3    you're taking your original contentions of fact and law

4    and substituting exhibit citations instead of deposition

5    citations?

6              MR. RALSTON:  Deposition exhibits.  Deposition

7    exhibits --

8              THE COURT:  Okay.

9              MR. RALSTON:  -- which were then made into

10   Plaintiffs' exhibits.

11             MR. MURRAY:  Your Honor, as we were filing both

12   the exhibit list and the contentions of fact

13   simultaneously -- and I'm sure Mr. Oliver has a similar

14   experience -- the exhibit ordering and selection was sort

15   of changing up to the minute.  So we did not, as of that

16   filing, have the ability to sort of go back and conform

17   citations either to documents that have been used as

18   exhibits in the depositions, we used the deposition

19   exhibit citations, or just Bates numbering from

20   government documents or other references to the

21   documents.  So we subsequently had the chance to go

22   through and conform those citations to actual Plaintiffs'

23   and Joint trial exhibits.

24             And so we think it's easier to track where the

25   citation is based on the exhibits as they've been

1   designated.  So that's the purpose is sort of to make the
2   ease of reference to the citations.

3            THE COURT:  Sure, that's fine.  If you want to
4   do that, it's no problem.

5            MR. RALSTON:  We'll file it as a corrected
6   version.

7            THE COURT:  That sounds good.

8            MR. RALSTON:  There are two other points.  As
9   the Court may have gathered from this conversation, we
10  will have some changes in our witness will call/may call
11  list.  And, fortunately, by virtue of the cooperative
12  aspects between counsel, we'll be able to avoid calling a
13  number of witnesses.  Would the Court want us to file
14  revised versions of our witness list or simply leave that
15  to counsel?

16           THE COURT:  Well, I would like to have the most
17  current version of the witness list before we start
18  trial.  So please submit a copy to the Court.  I think,
19  again, calling it a corrected copy will be fine.  And I'm
20  assuming Mr. Oliver doesn't have any objections, but if
21  there's anything in the way of a surprise, he may.

22           MR. OLIVER:  That's correct, Your Honor.

23           THE COURT:  Okay.

24           MR. RALSTON:  And on a similar point, Your
25  Honor, I think this -- really, you've answered it, and

1   that is I understand there may be some updating of the

2   Joint exhibits.  We can simply file a corrected version

3   of that list or we can do a motion for leave to file,

4   either way.

5           THE COURT:  Let's do --

6           MR. MURRAY:  And, Your Honor, I'll just offer a

7   little explanation on that.  You know, the Joint exhibits

8   include a lot of the annual letters about the Restoration

9   Fund collections and there was one that was issued in

10  November, so after the Joint exhibit list was filed, and

11  both parties agree that that should be a Joint exhibit.

12  And so, you know, we can certainly file a sort of

13  corrected and updated version of that.

14          And there are aspects of -- you know, the first

15  Joint exhibit was a spreadsheet that reflected

16  Restoration Fund collections through fiscal year 2016,

17  which was the most current as of when we filed the Joint

18  exhibit list.  Since then, they've closed the books on

19  2017, and so both parties have agreed that that

20  spreadsheet should be updated.

21          So I think there are some updates to some of

22  the exhibits that may -- you know, pages may have been,

23  you know, inadvertently omitted or other things that

24  don't require revision of the exhibit lists.  And so I

25  assume those we can probably handle just sort of offline

1    with counsel, as long as counsel are okay with, you know,

2    exchanging them and agreeing that that's what the new

3    exhibit looks like.

4          But I also wanted to address if there are some

5    additional -- you know, particularly the one exhibit I'm

6    thinking of where it's a new Joint exhibit that, in that

7    case, we should file I guess a corrected copy of the

8    Joint exhibit list or updated or however you want to

9    frame it.

10         THE COURT:  I think what you say is correct.

11   Do you agree, Mr. Oliver?

12         MR. OLIVER:  Yes, I'm fine with filing a

13   corrected Joint exhibit list.

14         THE COURT:  Okay.  Tell me, do the Joint

15   exhibits comprise one volume?

16         MR. MURRAY:  Yes, Your Honor.

17         MR. OLIVER:  Yes, Your Honor.

18         THE COURT:  Okay, good.  All right, that sounds

19   fine.

20         MR. RALSTON:  Your Honor, really our last point

21   is that the headlines of today, one can't help but not

22   wonder that come January 19th, there may be a government

23   shutdown.  Should that happen -- perhaps the Court has

24   faced that issue before given its unfortunate regularity

25   -- I would expect that we might have witness issues, so I

1  wanted to raise it and get -- have the benefit of the

2  Court's thinking on that circumstance should it arise.

3          THE COURT:  Well, first of all, as far as I am

4  concerned and court personnel in my chambers are

5  concerned, we are regarded as essential employees, so we

6  don't do anything different when there's a shutdown.

7  Also, since we are -- we will have embarked on an out-of-

8  town trial, everybody is expected to follow through.

9  Sometimes the Justice Department has told me that they

10  are not permitted to work, but I think they are permitted

11  to work if there's a Court direction in place for them to

12  participate.

13          So even if that should arise, I think the trial

14  will go forward as scheduled and everybody will be

15  expected to be there.

16          MR. RALSTON:  That's all that we have, Your

17  Honor.

18          THE COURT:  Okay.  Mr. Oliver?

19          MR. OLIVER:  I don't have anything else to add,

20  Your Honor, at this point.

21          THE COURT:  Okay.  So Mr. Ralston has covered

22  it all, I guess.  All right.  Well, thank you very much

23  for being available and participating today.  We will see

24  you all at the U.S. Courthouse in San Francisco on the

25  morning of the 16th.

1            MR. OLIVER:  Yes, Your Honor.

2            MR. RALSTON:  Yes, Your Honor, very good.

3      Thank you.

4            THE COURT:  Thank you.  Bye-bye.

5            (Whereupon, at 10:54 a.m., the hearing was

6      adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    CERTIFICATE OF TRANSCRIBER

2

3            I, Elizabeth M. Farrell, court-approved

4    transcriber, certify that the foregoing is a correct

5    transcript from the official electronic sound recording

6    of the proceedings in the above-titled matter.

7

8

9

10   DATE:  1/10/2018            S/Elizabeth M. Farrell

11                               ELIZABETH M. FARRELL, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```